IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **MITEK INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23-cv-00960 |
| | ) | |
| **MIKE MCINTOSH,** | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

**I.      INTRODUCTION**

A Temporary Restraining Order is warranted here because Defendant Mike McIntosh ("McIntosh") violated his contractual obligations to Plaintiff MiTek Inc. ("MiTek") – obligations that he fully voluntarily assumed – when he improperly went to work for a competitor of MiTek, and while using MiTek's confidential information, improperly solicited MiTek's clients. Moreover, in his similar sales position with MiTek's direct competitor, he will continue to violate the covenants he made to MiTek. McIntosh began working for MiTek on February 9, 1998. Since at least July 2020, McIntosh was subject to a COVENANT BY EMPLOYEE agreement ("Covenant"), which includes (1) non-compete, (2) non-solicitation, and (3) nondisclosure clauses. At the end of 2022 and beginning of 2023, McIntosh began reporting through a new management structure within the sales organization. As his new management team began to reach out directly to McIntosh's assigned accounts, MiTek learned McIntosh was intentionally harming the business interests of MiTek by making negative and/or disparaging comments about MiTek to its customers, causing issues with those customers. After MiTek discussed these performance issues with him, McIntosh submitted his resignation, effective May 1, 2023.

After McIntosh's resignation, the parties discussed resolution concerning the non-compete provisions of the Covenant. However, MiTek only recently learned, during these negotiations that McIntosh – unilaterally and without any notice - accepted new employment with a direct competitor, Eagle Metal Products, in the same or similar position he held at MiTek. In this new impermissible role, McIntosh is competing in the same geographic region which he worked for MiTek and by nature of his new position, either has already or will inevitably disclose MiTek's confidential information and trade secrets in the performance of his duties.

Further, McIntosh has been soliciting MiTek's customers, in blatant disregard of the non-solicitation provision of the Covenant. MiTek has learned McIntosh contacted and solicited MiTek's clients, violating his promises contained in the non-solicitation provision of the Covenant. In so doing, by misusing MiTek customer information, McIntosh has violated the nondisclosure clauses of the Covenant as well.

McIntosh's solicitation of MiTek's clients is presumably ongoing, and MiTek cannot know the full extent to which he has violated the Covenant until discovery is completed. McIntosh's actions, which directly violate his Covenant, will continue to cause significant harm to MiTek. MiTek has no choice but to file this Motion and seek injunctive relief to stop McIntosh's unlawful assault on MiTek's business. Unless halted, McIntosh seriously threatens and continues to threaten MiTek's business, good will with clients, and trade secrets.

MiTek brings this Motion for entry of a temporary restraining order pursuant to Fed. R. Civ. P. 65 to stop McIntosh from his continued misappropriation of its confidential, trade secret information and violation of his binding Covenant with MiTek.

## II.  STATEMENT OF FACTS

MiTek incorporates by reference the facts set forth in the Verified Complaint.

## III. ARGUMENT

To obtain a temporary restraining order, a movant must show: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. *See Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *see also Dataphase Sys. Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). To show a "likelihood of success on the merits," a party "need only show . . . a fair chance of prevailing" on the merits. *Kroupa*, 731 F.3d at 818.

### A. MiTek Has a Substantial Likelihood of Succeeding on the Merits of its Claims against McIntosh.

#### 1. MiTek Will Likely Prevail on its Breach of Contract Claim.

##### a. The Covenant is Enforceable.

MiTek is likely to succeed on its breach of contract claim. Breach of contract requires: (1) the existence and terms of a contract; (2) plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. *Martha's Hands, LLC v. Rothman*, 328 S.W.3d 474, 479 (Mo. Ct. App. 2010). Each element is met here.

McIntosh voluntarily entered into the COVENANT BY EMPLOYEE agreement ("Covenant") with MiTek, on July 9, 2020. *See* Exhibit A. In exchanged for continued employment and an increase in compensation, McIntosh agreed to non-compete, non-solicitation, and non-disclosure provisions. The Covenant's Non-Competition section, states:

> Employee agrees that, during Employee's employment with the Company and for a period of one (1) year following termination of such employment ("Restricted Period"), he/she shall not, directly or indirectly: (a) own, manage, operate, join, control, or participate in the ownership, management, operation or control of, or be employed by or otherwise connected with any business in which the trade secret or confidential information of the Company known by Employee

would be useful to compete with the Company; […] Employee acknowledges that sub-part "a" above will be limited geographically to the United States of America and the Provinces of Canada contiguous to the Continental USA (the "Territory"), but only to a geographic extent commensurate with the geographic scope of Employee's job responsibilities at any time during the last three (3) years of his/her employment by the Company, and Employee acknowledges that the Company's market and business extends throughout the Territory.

Ex. A, § 8.

Further, the Covenant's Non-Solicitation section, states:

Employee agrees that, during Employee's employment with the Company and for a period of one (1) year following termination of such employment ("Restricted Period"), he/she shall not, directly or indirectly: […] (b) without in any way limiting Employee's obligations under sub-part "a," solicit, or accept business from, do business with, or otherwise divert from the Company any customers and prospective customers of the Company for goods or services that are similar to or competitive with goods or services offered or sold by the Company as of the Termination Date; or (c) solicit, hire, recruit, divert, or take away from the Company the services of any of the employees or agents of the Company, or induce in any way any nonperformance of any of the obligations of such employees or agents to the Company.

Ex. A, § 8.

Finally, the Nondisclosure section states:

Employee agrees that the list of the Company's customers, its methods of production, techniques and know-how, its purchasing policies, sources and contract arrangements with suppliers, its current and anticipated research activities, its pricing and discount practices, its marketing, sales and distribution strategies and procedures, its designs, drawings and computer software programs and its other financial and business records are or contain confidential or trade secret information of the Company. All memorandums, notes, documents and other records containing, summarizing or relating to any such information, whether or not made or compiled by Employee, are and shall remain the sole property of the Company and shall be delivered to the Company promptly on the termination of Employee's employment for any reason or cause (or earlier upon request of the Company).

Employee further agrees that he/she will not at any time, except as required for the proper conduct of the Company's Business, publish or disclose or use, or authorize anyone else to publish or disclose or use, any trade secret or confidential information that he/she may receive or develop in the course of his/her employment for as long as such information does not become general public knowledge. […]

> In the event of a breach or threatened breach by Employee of the provisions of this Section 7, the Company shall be entitled to an injunction restraining Employee from disclosing, in whole or in part, the above-stated matters relating to the Company's Business. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available to the Company for any breach or threatened breach, including the recovery of damages from Employee.

Ex. A, § 7.

The Covenant also contains a Missouri choice-of-law provision. See Ex. A, § 9. Missouri courts recognize parties may choose the state whose law will govern the interpretation of their contractual rights and duties and will enforce choice of law provisions in noncompete agreements, so long as they do not violate a fundamental policy of Missouri law. *Ronnoco Coffee, LLC v. Castagna*, No. 4:21-CV-00071 JAR, 2021 WL 842599, at *6 (E.D. Mo. Mar. 5, 2021); s*ee also PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 326 (8th Cir. 2001) (citation omitted). The public policy of Missouri encourages the enforcement of covenants not to compete. *Emerson Elec. Co. v. Rogers*, 418 F.3d 841, 847 (8th Cir. 2005) (citing *Natl. Starch & Chem. Corp. v. Newman*, 577 S.W.2d 99, 104 (Mo. Ct. App. 1978) ("The policy of Missouri is to enforce reasonable restrictive covenants which tend to protect Missouri businesses from unfair competition by former employees.").

Missouri courts recognized public policy approves employment contracts containing restrictive covenants, because the employer has a proprietary right in its stock of customers and their good will, and if the covenant is otherwise reasonable, the court will protect the asset against appropriation by an employee. *Oros & Busch Application Techs., Inc. v. Terra Renewal Servs., Inc.*, No. 4:12CV00959 ERW, 2013 WL 6198159, at *5 (E.D. Mo. Nov. 27, 2013) (internal citations omitted). Even though McIntosh has solicited MiTek's customers, such a showing is not required for success on the merits in Missouri. *Paradise v. Midwest Asphalt Coatings, Inc.*, 316 S.W.3d 327, 329 (Mo. App. W.D. 2010) citing *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 75

(Mo. 1985) (reversing trial court holding because "requiring proof of an actual solicitation before an injunction could be granted was an erroneous declaration of the law").

Temporary and spatially limited restraints on an individual's exercise or pursuit of his occupation are enforceable if reasonable under all attending circumstances, and if enforcement serves the employer's legitimate interests. *Id*. Even if a covenant could hypothetically be subject to a broad interpretation, it is not rendered unenforceable where the case before the court, such as here, does not require a broad construction. *Perficient, Inc. v. Munley*, 4:19-cv-01565-JAR, 2021 WL 1427797, at *7 (E.D. Mo. Apr. 15, 2021), *appeal dismissed*, 43 F.4th 887 (8th Cir. 2022) *citing Panera, LLC v. Nettles*, 4:16-CV-1181-JAR, 2016 WL 4124114, at *3 (E.D. Mo. Aug. 3, 2016). Given this backdrop, the covenants will likely require enforcement.

McIntosh agreed to forgo employment with a competitor for one year after his employment with MiTek ended, in order to protect MiTek's confidential information and trade secrets. Despite entering into the Covenant, McIntosh accepted a position with Eagle Metal Products, a direct competitor of MiTek within mere weeks of his resignation. Eagle Metal Products operates in the same geographical area as MiTek. The narrow construction of the Covenant needed in this case easily warrants enforcement due to the nearly immediate breach of the Covenant with a direct competitor in the same region.

Even if the restrictive covenants were construed broadly, which is not necessary here, the temporal requirement of the Covenant (1 year) and the spatial restraint (a competitor of MiTek in the United States, within the geographic scope of McIntosh's job responsibilities) are reasonable and would have significant Missouri precedent for enforceability. *Whelan Security Co. v. Kennebrew*, 379 S.W.3d 835, 846–7 (Mo. banc 2012) ("Considerable precedent in Missouri supports the reasonableness of a two-year non-compete agreement"); *see also Washington County*

*Memorial Hospital v. Sidebottom*, 7 S.W.3d 542 (Mo. App. 1999) ; *Champion Sports Center, Inc. v. Peters*, 763 S.W.2d 367 (Mo. App. 1989) ; see *Osage Glass Inc. v. Donovan*, 693 S.W.2d 71, 74 (Mo. 1985). The non-competition clause of the Covenant should be enforced to prohibit McIntosh from competing in the same geographic region (North and South Carolina, Georgia, Virginia, and West Virginia). The Missouri Supreme Court has enforced such non-competition agreements because, among other things, with the violating employee working in the same geographical region, "[c]ustomers of the plaintiff well might seek him out at his new location," undermining the legitimate business interest of the company to maintain client contacts even before the violating former employee solicits such contacts. *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 75 (Mo. 1985). Courts applying Missouri law also readily enforce geographical limitations that span nationwide. *Express Scripts, Inc. v. Lavin*, 17CV01423 HEA, 2017 WL 2903205, at *4 (E.D. Mo. July 7, 2017) (finding a nationwide limitation to be reasonable in the circumstances); *Sigma Chemical Co. v. Harris*, 586 F.Supp. 704, 710 (E.D. Mo. 1984) (enforcing two-year, worldwide limitation); *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239 (Mo. App. 1993) (enforcing a nationwide non-compete for five years).

In terms of an employer's non-solicitation and nondisclosure covenants, an employer has a legitimate interest in customer contacts to the extent it seeks to protect against the influence an employee acquires over his employer's customers through personal contact. *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 842 (Mo. Banc 2012) (internal citations omitted); *Perficient, Inc. v. Munley*, No. 4:19-cv-01565-JAR, at *8 (E.D. Mo. Apr. 15, 2021).

MiTek invests a great deal of time and money in developing, cultivating, and maintaining relationships with its customers. MiTek develops, compiles, and maintains extensive confidential information about its Component Manufacturers' unique requirements and special needs, as a

result of years of targeted research, marketing, and client development. This confidential information includes, but is not limited to, pricing, purchase volumes, Component Manufacturers' strategic business plans, key contacts, and product use ("Confidential Information").

MiTek places great importance on protecting the disclosure of Confidential Information – in fact, it is reflected in one of MiTek's four Guiding Principles as reflected in MiTek's Code of Conduct. MiTek's commitment to the protection of Confidential Information is emphasized in its Code of Conduct, on which all MiTek employees receive yearly training.

MiTek's protectable interests and significant investment in its Confidential Information, client relationships, and employees warrant protection here. MiTek paid McIntosh a substantial salary to maintain MiTek's long-term client relationships. The non-compete and non-solicitation provisions are narrowly tailored to protect these interests, are reasonable in scope and duration, and customary in MiTek's competitive industry.

In addition to being narrowly tailored, the covenants impose *no hardship* on McIntosh. The Covenant allows McIntosh to be employed by anyone who would not benefit from the trade secrets and confidential information of MiTek for his first year of separation from MiTek, including any employer where he would be able to utilize the benefit of his experience and training received at MiTek. McIntosh is free to continue working in his chosen field, including working for Eagle Metal Products, one year after his voluntary resignation from MiTek, subject to those non-solicitation and confidentiality restrictions.

      **b.**      **McIntosh Breached and Continues to Threaten to Breach the Covenant**.

McIntosh has undoubtedly breached and threatens to continue to breach his Covenant. Shortly before his resignation from MiTek, McIntosh emailed documents from his work email to his personal email which, upon information and belief, contain Trade Secret and/or Confidential

Information of MiTek. Thereafter, he accepted employment with Eagle Metal Products in the same or substantially similar position competing in the same geographical region as he worked for MiTek.

McIntosh also has solicited his former clients at MiTek, including Piedmont Components and Rafters and Walls, in violation of his non-solicitation Covenant. Despite the non-solicitation clause of the Covenant, McIntosh is believed to be soliciting customers of MiTek to bolster his business with Eagle Metal Products.

If not enjoined, McIntosh will continue to use and disclose MiTek's Confidential Information, usurp its goodwill, and potentially steal business away from MiTek. This will cause revenue losses and destroy the years of hard work and significant monetary investments MiTek has made in developing its long-term client and employee relationships and confidential information.

### 2. MiTek Will Likely Prevail on its Defend Trade Secrets Act Claim

MiTek can establish a likelihood of success on the merits of its claim under the Defend Trade Secrets Act of 2015 ("DTSA"). *See* 18 U.S.C. § 1833, *et seq.* The DTSA expressly authorizes injunctive relief in the event of actual or threatened misappropriation of trade secrets. *See* 18 U.S.C. § 1836. Here, McIntosh's possession and apparent use of MiTek's trade secrets as part of his employment with Eagle Metal Products to compete with MiTek is a violation of McIntosh's obligations to protect MiTek's confidential, proprietary, and trade secret information in his Covenant.

Courts have granted motions for preliminary injunction when an agreement exists requiring an employee to protect the employer's confidential information. *See, e.g.*, *Champion Salt, LLC v. Arthofer*, 4:21-CV-00755-JAR, 2021 WL 4059727, at *11 (E.D. Mo. Sept. 7, 2021); *Panera, LLC v. Nettles*, No. 4:16-CV-1181-JAR, 2016 WL 4124114, at *4 (E.D. Mo. Aug. 3, 2016); *Perficient*

*Inc. v. Gupta*, No. 4:21CV759-HEA, 2021 WL 2805282, at *4 (E.D. Mo. July 6, 2021). Like other cases that have recently addressed the DTSA, McIntosh is in possession of MiTek's trade secrets. He is under a contractual, statutory, and common law duty to protect those trade secrets.

By virtue of his position with MiTek, McIntosh was privy to MiTek's trade secrets, including but not limited to its customer lists, new solution and marketing plans, manufacturing and software strategies, current and planned research activities, budgets and other forecasts, unpublished information about sales and profits, and MiTek's engineering resources giving him knowledge of MiTek's new product development efforts and potential issues with products – highly confidential information ("Trade Secrets"). McIntosh's employment with Eagle Metal Products is likely to draw upon, as a matter of course, MiTek's confidential resources and customer information. As such, McIntosh, would almost certainly draw upon and use MiTek's Trade Secrets, Confidential Information, and strategies in the performance of his position with Eagle Metal Products. The disclosure of MiTek's customer information and business strategy will result in irreparable harm to MiTek. *Experitec, Inc. v. Stachowski*, No. 4:14CV00154 AGF, 2014 WL 11089362, at *3 (E.D. Mo. Jan. 30, 2014). Accordingly, absent a temporary restraining order, MiTek will face irreparable harm. *See Panera, LLC v. Nettles*, No. 4:16-CV-1181-JAR, 2016 WL 4124114, at *4 (E.D. Mo. Aug. 3, 2016) (granting temporary restraining order where employment with competitor would result in inevitable disclosure of business strategy); *see also*, *Perficient Inc. v. Gupta*, No. 4:21CV759-HEA, 2021 WL 2805282, at *4 (E.D. Mo. July 6, 2021).

  **3. MiTek Will Likely Prevail on its Missouri Uniform Trade Secrets Act Claim**

Under the Missouri Uniform Trade Secrets Act ("MUTSA"), trade secrets include:

> Information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its

disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 417.453(4) RSMo.

Courts interpreting Missouri law have recognized business information such as marketing plans, financial information, pricing lists and policies, customer client lists or contacts, data compilations, and customer files constitute trade secrets if the information has independent economic value and is the subject of reasonable steps to maintain secrecy. *Conseco Finance Servicing Corp. v. North Am. Mortgage Co.*, 381 F.3d 811, 818-20 (8th Cir. 2004).

As set forth above, McIntosh has knowledge of MiTek's Trade Secrets, which have actual and potential independent and economic value to MiTek and are not generally known or readily ascertainable by MiTek's competitors. These Trade Secrets constitute trade secrets as defined by the MUTSA. Based on his position and job responsibilities at Eagle Metal Products and known and suspected acts, McIntosh has used or will inevitably disclose MiTek's Trade Secrets. In fact, as detailed above, McIntosh has used the list of MiTek's clients to contact at least two clients on behalf of Eagle Metal Products.

MiTek derives substantial, independent economic value from not having its Trade Secrets generally known to the public or to competitors. MiTek's success in its competitive industry is dependent upon a number of factors, including relationships with customers and MiTek's Confidential Information. MiTek engages in significant efforts to safeguard its Trade Secrets, as detailed above. MiTek has also met its burden of misappropriation. McIntosh has already used the information he obtained during his employment with MiTek to contact, at a minimum, Piedmont Components and Rafters and Walls, and has likely approached other former MiTek clients since joining Eagle Metal Products. Given McIntosh's disclosure and use, or potential disclosure and use, of MiTek's Trade Secrets and Confidential Information, injunctive relief is appropriate.

**B. MiTek Does Not Have an Adequate Remedy at Law and Will Suffer Irreparable Harm Without Injunctive Relief.**

MiTek will suffer irreparable harm without injunctive relief, for which there is no adequate remedy at law. Courts have consistently held that potential misuse of confidential information, such as customer information and business strategy, along with loss of goodwill, constitute irreparable harm. *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury."); *Perficient Inc. v. Gupta*, No. 4:21-CV-759 HEA, 2021 WL 2805282, at *3 (E.D. Mo. July 6, 2021) (citation omitted) ("Courts generally hold that the disclosure of confidential information such as customer information and business strategy will result in irreparable harm to the plaintiff."); *Express Scripts, Inc. v. Lavin*, 2017 WL 2903205, at *8 (E.D. Mo. July 7, 2017) ("Irreparable harm is also properly presumed where there is evidence that a covenant not to compete is breached or confidential, proprietary information is being improperly used."). Further, irreparable harm can be found where a non-compete agreement states that monetary damages could not adequately compensate the employer in the event of breach. *Champion Salt, LLC v. Arthofer*, 4:21-CV-00755-JAR, 2021 WL 4059727, at *11 (E.D. Mo. Sept. 7, 2021).

Without injunctive relief, McIntosh will bleed clients, and the secrecy of MiTek's Trade Secrets and Confidential Information will be destroyed. Its goodwill, in which it has substantially invested, will be ruined. These losses are intangible and cannot be quantified.

**C. The Balance of Hardships Weighs in Favor of a Restraining Order.**

Finally, the balance of the hardships tips in MiTek's favor. As set forth above, MiTek will suffer irreparable and unquantifiable harm if McIntosh is not enjoined. On the other hand, maintaining the status quo causes no harm to McIntosh. McIntosh can continue to work in his chosen field and compete fairly. The only arguable harm to McIntosh is that he would be enjoined

from violating his contractual obligations and disclosing MiTek's Trade Secrets and Confidential Information, but as he consented to the Covenant such harm was intentionally assumed and self-inflicted. McIntosh chose to accept terms by which he could not solicit customers, not compete with MiTek, and not misuse MiTek's Confidential Information. In such circumstances, the balance of harms particularly favor MiTek since any potential injury to McIntosh was largely self-inflicted. *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997 (8th Cir. 2011).

Thus, the balancing of the potential harms weigh decidedly in favor of the relief sought.

### D. Public Interest is Served.

The public interest is served by upholding the sanctity of MiTek's contract and preventing McIntosh from reaping the benefits of his tortious conduct, breach of contract, misappropriation of Trade Secrets, and other unlawful behavior. There is also no harm to the public caused by restraining McIntosh's employment with Eagle Metal Products or restraining the misappropriate of MiTek's proprietary information. Conversely, denying the parties' ability to rely on each other to comply with their agreements, and denying parties' ability to rely on the courts to enforce agreements when they are breached, does cause harm to the public. *Mizell v. Prof'l Transp. Sols., LLC*, 4:18CV1706 HEA, 2018 WL 4961495, at *3 (E.D. Mo. Oct. 15, 2018). The public interest thus weighs in favor of enjoining McIntosh's breach of the Covenant, as requested by MiTek.

## IV. CONCLUSION

For all of the above reasons, MiTek prays that this Court enter a temporary restraining order, pending a preliminary injunction hearing after expedited discovery.

Respectfully submitted,

*/s/ Joseph M. Wientge, Jr.*
Joseph M. Wientge, Jr. #57494MO
jwientge@littler.com
Morgan L. Taylor #67750MO
mltaylor@littler.com
LITTLER MENDELSON, P.C.
600 Washington Avenue
Suite 900
St. Louis, MO 63101
Telephone: 314.659.2000
Facsimile: 314.558.3966

*Attorneys for MiTek Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of August, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and served the foregoing document via special process server as follows:

Mike McIntosh
813 S. Bend Dr.
Durham, NC 27713

*Defendant*

*/s/ Joseph M. Wientge, Jr.*

4881-9734-2323.7 / 106323-1014